

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*LaRai Everett*  *Suite 400*  DIRECT: 410-209-4869
*Assistant United States Attorney*  *36 S. Charles Street*  MAIN: 410-209-4800
*LaRai.Everett@usdoj.gov*  *Baltimore, MD 21201-3119*  FAX: 410-962-0717

March 11, 2020

The Honorable Ellen L. Hollander
United States District Judge
U.S. Courthouse
101 W. Lombard St.
Baltimore, MD 21201

     RE:    United States v. Keon White
               Crim No.: ELH-19-00286

Dear Judge Hollander:

     I write to respond to the recent sentencing memorandum filed by Keon White on March 9, 2020. Because this case involves a C-plea, and both parties recommend the same sentence, there is no need to resolve the issues raised in White's memorandum. *See* Fed. R. Crim. P. 32(i)(3)(B). Nevertheless, the government agrees that a sentence of 70 months' (5.8 years) imprisonment is appropriate.

     **I.**    **SENTENCING GUIDELINES**

     Based on the Presentence Report ("PSR"), White's natural Guidelines range is 87 to 108 months, based on a final offense level 27 and criminal history category III. *See* PSR ¶¶ 23, 35.

     The PSR concludes, however, that White is a career offender, raising his range to 151 to 188 months, based on a final offense level 29 and criminal history category VI. *See* PSR ¶¶ 26, 36.

     **II.**    **"CONTROLLED SUBSTANCE OFFENSES" INCLUDE ATTEMPTS AND CONSPIRACIES**

     As a preliminary matter, the Court does not need to decide whether Application Note 1 to U.S.S.G. § 4B1.2 expands the definition of "controlled substance offenses," because, if the Court accepts the C-plea, then a "ruling would be unnecessary" and "the matter will not affect sentencing." Fed. R. Crim. P. 32(i)(3)(B). The parties entered into a C-plea jointly agreeing to recommend a 70-month sentence. Both parties have kept that agreement. And the jointly-

recommended sentence is below both Guidelines calculations.  So, if the Court believes 70 months is appropriate under § 3553(a), even after considering both White's natural and career-offender Guidelines, then there is simply no need to resolve this dispute.

In fact, even White agrees that this is the appropriate result despite what his Guidelines end up being.  *See* Plea Agreement ¶ 9 (agreeing that the sentence is appropriate under § 3553(a)); *id.* ¶ 8 (agreeing that his criminal history could alter his Guidelines from what the parties initially contemplated).  The Court should note our objections, adopt the PSR as written, and decline to rule on the issue under Rule 32(i)(3)(B) because a decision will not affect sentencing.

If the Court chooses to decide this dispute, then White—who acknowledges that no Fourth Circuit case compels the legal result he urges—is wrong.[1]  The Fourth Circuit continues to apply Application Note 1 to controlled substances offenses with as equal force as the substantive text, having done so just months ago.  *See United States v. Norman*, 935 F.3d 232, 237 (4th Cir. 2019); *United States v. Dozier*, 848 F.3d 180, 183 (4th Cir. 2017); *see also United States v. McCollum*, 885 F.3d 300, 304 (4th Cir. 2018) (applying Application Note 1 to "crimes of violence").

Nor does the Guidelines text plainly exclude inchoate offenses.  For example, § 4B1.2(b) defines "controlled substance offenses" as including the offense of "distribution."  Yet, under the Controlled Substances Act, "distribute" means "to deliver," and "deliver" includes "actual, constructive, or *attempted*" transfers.  21 U.S.C. §§ 802(8), 802(11) (emphasis added).  Since distributions inherently include attempts, then, applying White's logic, the Guidelines text would include attempts while excluding them at the same time.

Indeed, the Sentencing Commission agrees that this is the case.  Responding to challenges like White's, the Commission confirmed that the "career offender guideline includes convictions for inchoate offenses," and it has proposed amendments to "alleviate any confusion."  *See Proposed Amendments to the Sentencing Guidelines*, United States Sentencing Commission, at 43–47 (Dec. 20, 2018).[2]  In light of the Fourth Circuit case law as it stands, coupled with the Commission's efforts to eliminate these lines of attack, the Court should conclude that Application Note 1 applies with equal force as the text.

---

[1] The Government recognizes that the career-offender designation was not contemplated in the plea agreement.  While the Government intends to honor that agreement, it also understands the Court's obligation to correctly calculate the Guidelines.  The Government submits this letter solely to aid the Court in carrying out that obligation consistent with the law.  The Government neither seeks nor relies on the career-offender designation for its sentencing recommendation.

[2] Available at: https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20181219_rf-proposed.pdf (last accessed Mar. 11, 2020).

### III.     SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

Turning to the § 3553(a) factors, the government believes the following 3553(a) factors are most relevant in this case:

A.  <u>Nature and Circumstances of the Offense (3553)(a)(1))</u>

As to the nature and circumstances of White's offense, there is no dispute that White's actions of engaging in drug trafficking is serious and it is clear that there must be consequences for his criminal activity. White admitted that throughout the course of his involvement that it was reasonably foreseeable to him, and within the scope of the conspiracy that he or other members of the conspiracy would distribute more than 280 grams of cocaine base ("crack"), as well as quantities of cocaine, heroin and fentanyl during the course of and in furtherance of the conspiracy. Furthermore, during the investigation, investigators identified White as a drug distributor for the Montford DTO, a street-level drug trafficking "shop" located in the 400 block of North Montford Avenue at Jefferson Street, Baltimore, Maryland. Furthermore, as detailed in the plea agreement, on October 11, 2018, White sold crack to an undercover officer. There is no doubt, that selling crack as well as other controlled dangerous substance is a serious offense and as such should be a factor taken into account when considering the appropriate sentence for White.

B.  <u>History and Characteristics of the Offender (3553(a)(1))</u>

The Government does not contest the career offender calculations noted by the PSR. While, technically the PSR calculation is correct, the Government is not going to alter its 70 month recommendation. In fact, the government believes that the enhanced career offender status based on the 2009 probation before judgement seems like an artificial enhancement and should not be a factor weighed against White.

White's only conviction stems from a 2009 felony drug distribution conviction. White received a four year sentence of incarceration. The conviction is serious and should be included. The government notes that White's prior drug-trafficking, albeit minor, coupled with the current drug trafficking offense indicate a risk to the public for future crimes by White. Because that risk exists, the government is recommending 70 months.

At the same time, the age of White's past convictions is the reason why the government is not recommending a lengthier sentence, and is actually recommending a below-guidelines recommendation. White's criminal history score is minimal and initially, the Government believed that White's criminal history category was three points, or a Category level II. If that had been accurate, White's guidelines would have been 78-97 months. However, the PSR calculated both the 2009 PBJ as well as the 2009 conviction and concluded that White's criminal history score is a four, or a category III. ¶ 35.

In its recommendation, the Government and White reached a resolution driven almost entirely by the one 2009 conviction that is just shy of 10 years old. The Government believes that the almost six-year sentence is sufficient and while not substantially more than what White received in 2009, it is still a sufficient sentence.

   C. <u>The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, to Provide Just Punishment for the Offense, to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant (3553(a)(2))</u>

A drug trafficking crime like this one requires a sentence that will reflect the seriousness of the offense, deter crimes by other potential drug traffickers, and protect the public from future such crimes by White. White should receive a substantial sentence. Prosecution in federal court was particularly appropriate given that expansiveness of the conspiracy which indicted 24 other defendants for their involvement in this conspiracy.

The need for deterrence should also be considered. The government believes that White's conduct, in combination with his character and history, is adequately reflected by a sentence below-guidelines and further believes such a sentence is sufficient to provide both a general deterrent and specific deterrent effect.

The major reason for the government's below-guidelines recommendation is White's minimal criminal history and the age of his conviction. Despite the fact that he qualifies as a career offender, a sentence of almost six years is lengthy and reasonable, and balanced in light of the above factors. The government believes that in this particular case, it is sufficient but no greater than necessary to achieve the required purposes of sentencing.

The government thanks the Court for its consideration of this matter.

                                                Sincerely,

                                                Robert K. Hur
                                                United States Attorney

                                                *LaRai Everett*

                                                LaRai Everett
                                                Assistant United States Attorney

cc:    Counsel via ECF and email